# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

DIANNE DANIELS,              )
                             )
    Plaintiff,           )
                             )
v.                           )
                             )    Case No. CV415-066
CAROLYN COLVIN,              )
Acting Commissioner of       )
Social Security,             )
                             )
    Defendant.           )

## <u>REPORT AND RECOMMENDATION</u>

Alleging disability due to depression, spine surgery, back and neck problems, auditory hallucinations, and carpal tunnel syndrome, plaintiff Diane Daniels seeks judicial review of the Social Security Commissioner's denial of her application for Supplemental Security Income (SSI). Doc. 1.[1]

## I. GOVERNING STANDARDS

In social security cases, courts:

---

[1] "Doc." citations use the docket and page numbers imprinted by the Court's docketing software. Those do not always line up with each paper document's printed pagination. "Tr." citations, on the other hand, use the page numbers in the bottom right corner of the administrative record, which is located on the docket at Doc. 10.

review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the Administrative Law Judge (ALJ) applies

a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work

experience.[1] An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert]. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnotes added).

## II. ANALYSIS

Daniels, 53 when the ALJ denied her SSI application (Tr. 17, 37) and 49 on her alleged disability onset date (Tr. 4, 37), has a tenth grade education (Tr. 39)[2] and past work experience as building cleaner, cookie packer, salad bar attendant, housekeeper, and clothing ticketer. Tr. 39-45, 52-53, 69. She filed for SSI on July 20, 2010 (Tr. 141) alleging a disability onset of March 5, 2010. *Id.* Following

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

[2] The Court is unclear what grade Daniels completed. During the hearing, she testified to having completed tenth grade. Tr. 39. In a pre-hearing disability report given when she first applied for benefits, however, she stated that she completed eleventh grade. Tr. 168. The actual grade completed doesn't much matter, but the reporting discrepancy undermines Daniels' credibility.

administrative denial, she attended and testified at a hearing on August 13, 2013 before the ALJ, who later denied her application.   Tr. 4, 15.

To Daniels, that's error.   In particular, she argues that the ALJ erred by (1) finding her neck and back impairments and carpal tunnel syndrome to be non-severe impairments; (2) "not finding [her] spinal disorders to meet Listing 1.04(A); (3) "failing to state the weight afforded to the opinions of [a neurological] consultative examiner;" (4) improperly discrediting "Plaintiff's subjective allegations of pain and functional limitations;" (5) not mentioning a third-party function report; and (6) finding that she "could sit, stand, walk, lift, carry and operate hand controls for 6 hours out of an 8-hour day."   Doc. 12 at 1-2.

### A.   Severity

While the regulations use terms like 'severe' and 'significant,' the step-two threshold is not a high one.   Step two is 'designed to screen out only clearly groundless claims.'   *Jones v. Astrue*, 2011 WL 1587731 at * 7 (S.D. Ga. March 29, 2011).   It screens out 'those applicants whose medical problems could 'not possibly' prevent them from working.'   *Stratton v. Bowen*, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987) (quoting *Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir. 1985)); *see Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) ('The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found

to be disabled even if their age, education, and experience were taken into account.'); 70C AM.JUR.2D SOCIAL SECURITY AND MEDICARE § 2006 (2011) (all that must be shown is a *de minimis* impairment or combination of impairments 'which are of medical severity sufficient to significantly limit physical or mental ability to do basic work activities').

Indeed, the Eleventh Circuit has described the step-two test as the 'slight abnormality' test. *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987) (per curiam). Under that test, 'an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' *Id.* It 'allows only claims based on the most trivial impairments to be rejected.' *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The claimant's burden is 'mild.' *Id.* Too, 'the application of a threshold severity regulation that is greater than *de minimis* is invalid under the terms of section 205 *et seq.* of the Social Security Act.' *Stratton*, 827 F.2d at 1453. That is because '[a]n overly stringent interpretation of the threshold severity requirement violates the statutory standard for disability by precluding an administrative determination of the crucial statutory question: Whether, in fact, the impairment prevents the claimant from working, given the claimant's age, education and experience.' *Id.*

*Ingram v. Colvin*, 2015 WL 7302739 at * 2 (S.D. Ga. Nov. 18, 2015).

The ALJ in this case found only one severe impairment: depression. Tr. 6. He explicitly found Daniels' "neck and back pain" non-severe because they "cause minimal functional limitations." And

he never mentioned her carpal tunnel in the context of his severity analysis.  Tr. 7.

The Court need not determine whether any of those findings and omissions constituted error.  "Even if the ALJ erred in not indicating whether [carpal tunnel] was a severe impairment [or in finding neck and back pain non-severe], the error[s were] harmless because the ALJ concluded that [Daniels] had a severe impairment: and that finding is all that step two requires.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1991) (applying the harmless error doctrine to social security cases); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ('[T]he finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe' is enough to satisfy step two) (emphasis added)."  *Heatly v. Commissioner of Social Security*, 382 F. App'x 823, 824-25 (11th Cir. 2010).

> As long as the ALJ determines the claimant has one severe impairment at step two, the ALJ must proceed to the remaining steps of the evaluation process as the step two determination of severity is merely a threshold requirement.  Thus, there is no step two impairment inventory requirement.  So long as the limiting effects of the other impairments are considered at steps three, four,

and five, the lack of inventory at step two (or a non-severe finding at step two) on those other impairments is usually a harmless error.

Carolyn A. Kubitschek & Jon C. Dubin, SOCIAL SECURITY DISABILITY LAW & PROCEDURE IN FEDERAL COURT § 3:14 (2015 ed.).

In *Castile v. Astrue*, for example, the ALJ found several severe impairments, but specifically "indicated that Castile's chronic fatigue syndrome was not severe." 617 F.3d 923, 927 (7th Cir. 2010). That "particular determination," correct or not, was "of no consequence with respect to the outcome of the case" because "the ALJ recognized . . . other severe impairments." *Id.* He therefore "was obligated to proceed with the evaluation process." *Id.* He did so by considering Castile's syndrome "along with her other severe and non-severe impairments in determining [at step four] whether Castile could perform her past work." *Id.*

The ALJ in this case acted similarly. He found one severe impairment (depression) and proceeded to step three of the sequential analysis, where he found no impairments that met or equaled a listed impairment. Tr. 7-8. As in *Castile*, the ALJ then conducted steps four and five, where he found that although Daniels could not perform past

relevant work, she retained the RFC for light work with some limitations.[3] Tr. 9.

At those steps (four and five), the ALJ considered not only Daniels' depression, but also her neck and back issues, as well as her carpal tunnel allegations. *See* Tr. 9-15. He acknowledged her neck surgery, use of an un-prescribed cane, "bilateral knee pain and swelling," "left wrist/hand pain," right hand carpal tunnel, and need to take pain pills. Tr. 9. Despite finding that Daniels' "medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms," the ALJ discounted her subjective allegations (a finding discussed below) because "they are unsubstantiated by the clinical and diagnostic examinations, tests and findings." *Id.*

---

[3] Daniels contends that *Heatly*'s rule limits harmless error at step two to cases where the ALJ then discusses all (not just severe) impairments at step *three* before reaching steps four and five. Doc. 14 at 2 (citing *Heatly*, 382 F. App'x at 826 ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination."). A closer reading of *Heatly* and the cases it cites, however, reveals that the crux of step-two harmless error lies in whether the ALJ at any point, not just at step three, considered all of a claimant's alleged impairments. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (reversing ALJ's decision because the court was "unable . . . to determine if *at any step in his sequential analysis* he considered the claimant's entire medical condition") (emphasis added) (cited in *Heatly*, 382 F. App'x at 826).

He also discussed Daniels' treatment records from the Neurological Institute of Savannah, which document her neck pain pre-surgery, and noted that "she had fully recovered from the surgery."[4]  Tr. 10.  He reviewed consultative physical therapy, neurological, and psychological examinations, and medical records from several emergency room visits, not to mention a state agency consultant's medical assessment.[5]  Tr.

---

[4]  Specifically, the ALJ observed that Daniels "tolerated the [neck surgery] well and without complications," and that when released from physician monitoring "she had fully recovered."  Tr. 10; *see also* Tr. 402 (notes observing that twenty days post-op Daniels' cervical spine range of motion was only "a little limited"); Tr. 403 (four months post-op, notes indicate that Daniels "is doing well" and "not having difficulty walking," with "no arm or neck pain" and only "a little soreness in the interscapular region").

[5]  The ALJ discounted the therapeutic consultation -- which found "significant functional limitations" related to neck and back issues -- "because [Daniels'] presentation to the neurological consultative examiner . . . two months later was vastly different than to the physical therapist."  Tr. 10.  Regardless of how Daniels explains that conflict (which indeed exists since the neurologist, Dr. Taormina, found virtually no strength, range of motion, or functional limitations), it provides a sufficient basis to discount the therapist's more pessimistic functional outlook.  *See, e.g.*, 20 C.F.R. § 404.1529 (in evaluating intensity and persistence of symptoms, the Commissioner "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence"); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (good cause exists to discount treating physician opinions when record evidence supports a contrary finding).

The ALJ did *not* discount the ER records or psychological assessment; rather, he found that they simply did not support a disability finding.  Tr. 10-11.  Indeed, the objective medical evidence (which related to her knee, wrist, chest, hips, and legs) was "essentially normal."  *Id.*

11-13.   Daniels may disagree with how the ALJ weighted those medical opinions, but it cannot be said that he failed to consider the limiting effects of her non-depression impairments.[6]   At best, then, his severity

---

[6]   In the ALJ's own words:

> [W]hile [Daniels'] has a history of cervical spine surgery which certainly suggests that her symptoms were genuine, the record reflects that the surgery was generally successful in alleviating her symptoms prior to surgery (despite her allegations). Nevertheless, the Administrative Law Judge has considered the claimant's cervical impairment history, but finds no objective evidence to conclude that it precludes the performance of substantial gainful activity within the assessed residual functional capacity. Neurological consultative exam showed some decreased range of motion and extension of the neck on the right, but no progressive neurological problems. Post-operative x-rays showed normal alignment of the cervical spine, and most recent EMG/Nerve Conduction Studies shows no current evidence of radiculopathy of the cervical spine or peripheral polyneuropathy, or myopathy. The neurological examiner indicated no physical limitations related to claimant's reported neck and back pain.
>
> The claimant also has subjective complaints of back pain, but x-rays of the lumbar and thoracic spine are essentially normal. Additionally, neurological exam showed 5/5 motor strength in upper and lower extremities and no sensory deficits; or gait abnormalities.
>
> The claimant complains of bilateral knee pain, but x-rays of the right knee in January 2010 showed no more than mild degenerative changes; otherwise, normal alignment (Exhibit 2F/35). X-rays of the left knee in September 2012 was essentially normal (Exhibit 18F/15). Most recent physical exams again shows no motor or sensory deficits in the lower extremities; no edema of the lower extremities; or gait abnormalities.
>
> The claimant presented to the hearing room with a cane (not prescribed) and testified that she has had to use it for ambulation since a fall in May 2013, but this is not corroborated in medical records. The claimant was seen in the emergency room department on this date complaining of hip pain but did not report that it was related to any trauma or injury. There were no significant objective findings noted on x-rays or physical exams, and her hip pain was felt to

finding constitutes harmless error and cannot undergird reversal of his decision.

## B.    Listing 1.04(a)

Daniels also complains that the ALJ "did not entertain any discussion of whether or not Plaintiff's spinal disorders met or equaled Listing 1.04(a)."[7]   Doc. 12 at 10.   Doing so, she says, "ignored an

---

be possibly related to arthritis. She was discharged in stable condition with no restrictions.

The claimant has subjective complaints of left wrist pain and presented to the hearing with a wrist splint allegedly given to her by a doctor, with instructions to only wear it at night. The record indicates the claimant was recently seen in the emergency room department in April 2013 complaining of left wrist pain with a recent onset, but physical exams and x-rays of the left wrist was essentially normal except for wrist sprain. She was prescribed pain medications as needed with no restrictions. There is no evidence of any additional treatment for the left wrist pain since this time. While the claimant does have evidence of mild right carpal tunnel syndrome, she denies any significant problems related it (testimony).

Tr. 11-12.

[7]   That listing covers:

[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg

overwhelming amount of medical evidence in the record, as well as function reports and testimony from Plaintiff and other sources." *Id.*

Daniels has the burden of proving that an impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). A lot goes into that. And the governing principles make clear that ALJs are not constrained to indulge in rote, blow-by-blow determinations:

> [t]o "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. 20 C.F.R. § 404.1525(a)-(d); *Wilson*, 284 F.3d at 1224. To "medically equal" a Listing, the medical findings must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a); *Wilson*, 284 F.3d at 1224. If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments'

---

raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04A.

symptoms, signs, and laboratory findings to determine whether the combination is medically equal to the criteria of any listed impairment. *Id.* An impairment that meets *only some* of the criteria of a Listing, no matter how severely, does *not* qualify. 20 C.F.R. § 416.925(c)(3). The ALJ's finding as to whether a claimant meets a listed impairment *may be implied from the record. Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir.1986). Furthermore, while the ALJ must consider the Listings in making [his] disability determination, "it is not required that the [ALJ] mechanically recite the evidence leading to [its] determination." *Id.*

*Kalishek v. Commissioner of Social Security*, 470 F. App'x 868, 870 (11th Cir. 2012) (emphasis added).

Although the ALJ here never said "Daniels' impairments fall short of Listing 1.04A," the record makes abundantly clear that he found precisely that. For starters, he explicitly stated that Daniels lacked "an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments." Tr. 7. He also discussed in detail the objective medical evidence relating to Daniels' neck and back, finding, among other things, that "x-rays of the lumbar and thoracic spine are essentially normal," and that the "most recent EMG/Nerve Conduction Studies show[] no current evidence of radiculopathy of the cervical spine or peripheral polyneuropathy, or myopathy." Tr. 12. Taken together, that discussion and the ALJ's

listing conclusion show that he found that Daniels' "impairments were not contained in the [spine disorders] listings." *Hutchison*, 787 F.2d at 1463. The Court "thus consider[s] it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments." *Id.*

## C.   Dr. Taormina's Opinion

Daniels next contends that reversible error exists because the ALJ never "specifically state[d] the weight he g[ave] to Dr. Michael Taormina's neurological exam." Doc. 11-12. It's true that ALJs must "state specifically the weight accorded to each item of evidence and why [they] reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Context is king, however.

In *Cowart* the ALJ said, without any elaboration, only that he gave "weight to each [medical opinion] as he feels should be properly accorded to it." *Id.* Isolating *Cowart*'s rule from that factual underpinning

ignores other precedent making clear that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005) (alterations in original) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

In this case, not only is the ALJ's decision not the "broad rejection" *Dyer* and *Cowart* frown upon, but it also included specific mention of Taormina's opinion and the weight it received. The record reflects that only one consulting neurologist examined Daniels -- Taormina. So when the ALJ stated "the undersigned gives some weight to the medical opinion of the neurological consultative examiner [because it] was based on an[] in-person examination and specific facts and findings," he must have been referring to Taormina. Tr. 13. He needn't have done anything more.

## D.    Daniels' Credibility

"Like most [SSI] denials, the [ALJ] found [Daniels] not fully credible." Doc. 12 at 13 (plaintiff's brief). Daniels contends that

"decision relies on misstatements of the facts regarding her function" and thus is "not supported by substantial evidence." *Id.* at 14-15.

Where, as here, a claimant attempts to establish disability through her own testimony of subjective limitations, the "pain standard" applies. *Dyer*, 395 F.3d at 1210. That demands:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Watson v. Colvin*, 2015 WL 8467014 at * 6 (S.D. Ga. Nov. 18, 2015) (quoting *Holt*, 921 F.2d at 1223).

As the Eleventh Circuit explained:

> The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986); *Landry*, 782 F.2d at 1152. If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Hale*, at 1054; *MacGregor*, 786 F.2d at 1054.

*Holt*, 921 F.2d at 1223.

To Daniels, the ALJ inaccurately listed her activities of daily living (ADLs) and concluded that they justified his credibility determination. His decision reveals more. After acknowledging that Daniels testified "to being fairly limited in [ADLs]," the ALJ found that "neither the neurological examiner nor the psychological examiner indicated any significant physical or mental limitations exist that would prevent the claimant from performing her normal [ADLs]." Tr. 13. Substantial evidence exists to support that conclusion.[8]

The ALJ also considered Daniels' testimony that she stopped

---

[8] Taormina, the neurological consultant, indicated that Daniels retained 5/5 strength in all extremities with no atrophy; 5/5 grip and pinch strength; normal "fine and gross coordination of affected extremi[ties];" and normal functional use of extremities. Tr. 430. He also stated that Daniels did not need an assistive device to ambulate -- which the ALJ specifically noted stood at odds with Daniels' use of an un-prescribed cane (Tr. 9) -- and, in his opinion, was "mentally capable of managing [her own money]." Tr. 431. Even the physical therapy consultation (which Daniels consistently cites as supporting her functional limitations) reveals only mild strength weakness. *See* Tr. 423.

An RFC assessment from May 2011 shows *no* functional limitations, and was contradicted by no medical opinions. Tr. 439-444. X-rays later that year showed "unremarkable" lumbar and thoracic spines. Tr. 467. The psychologist's examination revealed much the same (no limitations). *See* Tr. 491 ("From a mental health perspective . . . Claimant can adhere to the demands of a typical work schedule . . . [and] is able to adapt," though she "will have a limited pace in a work setting especially over a two hour time span.") The bottom line is that substantial evidence supports the ALJ's conclusion that objective medical evidence contradicts Daniels self-reported pain and functional limitations.

work only after being laid off, not because of disability.   Tr. 13.   That, he noted, "raises the question of whether her current unemployment is truly the result of medical problems."   *Id.*   Along with his reference to the neurological and psychological examinations, that constitutes "explicit and adequate reasons" for not crediting Daniels' testimony. *Holt*, 921 F.2d at 1223; *Ricker v. Commissioner of Social Security*, 2014 WL 6610849 at * 10 (M.D. Fla. Nov. 21, 2014) (plaintiff's admission "that he stopped working because he was laid off, not because his condition prohibited him from performing his job," supported ALJ's decision to discredit his limitations testimony).

At bottom, the ALJ determined that the objective medical evidence did not confirm the severity of the pain Daniels alleged.   *Id.* Because substantial evidence supports that determination, this Court cannot second guess it.[9]

---

[9]   As noted above, Daniels also argues that the ALJ erred by not mentioning the third-party function report her niece provided.   Doc. 12 at 15.   Family member testimony indeed is "evidence of a claimant's subjective feelings of pain."   *Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir.1983)).   "Even if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's

### E. Daniels' RFC

Finally, Daniels' argues that the ALJ's RFC finding ignored or improperly discounted her neck, back, wrist pain, hand tremors, and muscle weakness. Doc. 12 at 16. As noted in footnote one, RFC is "that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) (citing 20 C.F.R. § 404.1545(a)). ALJs must "assess and make a finding about [a claimant's RFC] based on all the relevant medical and other evidence" in the case." *Id.* (citing 20 C.F.R. § 404.1520(e)).

The ALJ in this case properly considered Daniels' alleged physical impairments. He discussed the record as a whole, including her testimony and daily activities, and found that she was able to perform a range of light work. Put differently, substantial evidence, such as

---

testimony." *Id.*

    The ALJ here found, based on the objective medical evidence itself, that Daniels' impairments were a) not severe, and b) did not, in isolation or combination, eliminate her residual functional capacity to work. "Thus, there was a clear, though perhaps implicit, rejection of the subjective [family] testimony as to the disabling nature of [Daniels'] pain." *Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981) (cited in *Osborn*, 194 F. App'x at 666).

Taormina's examination, shows minimal functional limitations and thus supports the ALJ's RFC finding.

After properly assessing Daniels' RFC, the ALJ found that she could not perform her past relevant work. Tr. 14; *see also* 20 C.F.R. § 416.920(a)(4)(iv). The burden of production then shifted to the Commissioner to show that there is other work Daniels could perform given her age, education, prior work experience, and RFC. See *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The Commissioner can meet that burden by using vocational expert (VE) testimony in response to hypothetical questions that encompass a claimant's impairments, as the ALJ did here. *See* Tr. 70-72.

Daniels contends the ALJ's hypothetical "did not encompass all of [her] limitations." Doc. 12 at 18. But an ALJ is not required to include findings in a hypothetical question that he has properly rejected as unsupported. *See Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir 2004). Reliance on the VE's testimony was proper in this case because the hypothetical posed adequately portrayed the limitations the ALJ found credible, and the VE identified work

compatible with the limitations set forth in that hypothetical (Tr. 70-72). *See Crawford*, 363 F.3d at 1161. The VE specifically identified jobs Plaintiff could perform (office helper, routing clerk, and a garment sorter). Tr. 15, 70-72. The burden then fell to Daniels to show that she could not perform other work, which she failed to do. *See Doughty*, 245 F.3d at 1278 n.2 (a claimant must prove that he is unable to perform the jobs listed by the Commissioner).[10]

Finally, Daniels objects to the ALJ's conclusion that she could "take 2 hours['] worth of breaks every day at work to accommodate her time-off-task for pain." *Id.* That, however, misstates the ALJ's RFC finding. He never said anything about two hours of breaks. [11]

---

[10] Daniels contends that the ALJ "failed to consider [her] significant limitations with respect to grasping, fingering, and handling with her right hand. The clinical evidence," she urges, "suggests limitations of no more than occasional use of the upper extremities bilaterally," which "render her disabled." Doc. 12 at 17-18. Daniels' testimony tells a different story. Though she testified to significant pain in her left hand, Daniels admitted that she has no problems with her right hand. Tr. 62. She stated that she has "pains in it sometime, but they don't bother [her]," and that she "don't have that much problems with it no more" despite a past carpal tunnel diagnosis. *Id.* Her arguments (which are not objective medical evidence) to the contrary thus fall flat.

[11] At her hearing, Daniels' attorney asked the VE whether two hours of breaks would preclude competitive employment. Tr. 72. She concluded no jobs exist that could accommodate such a restriction. Tr. 73.

Instead, he found that "any time-off-task can be accompanied by normal breaks." Tr. 8. That finding implicitly (and properly) rejected Daniels' contention that she would be off task because of pain for two hours out of an eight hour work day. Tr. 8, 72-73; *see Crawford*, 363 F.3d at 1161. And because the ALJ's RFC finding included no legal error, it cannot support reversing his decision.

## IV. CONCLUSION

Because substantial evidence supports the ALJ's conclusion that Daniels is "not disabled," Tr. 15, the Commissioner's decision denying benefits should be affirmed. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

**SO REPORTED AND RECOMMENDED**, this 22nd day of June, 2016.

_J. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA